**Tommie Lee HASS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 584–88.**

Court of Criminal Appeals of Texas, En Banc.

May 9, 1990.

J. Michael Wilson, John H. Hagler (on appeal only), Dallas, for appellant.

Galen Ray Sumrow, Dist. Atty., and Joe Bridges, Asst. Dist. Atty., Rockwall, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

█ This is an appeal from a conviction for possession of phenylacetone. The jury assessed punishment at life imprisonment and a $100,000.00 fine. The Fifth Court of Appeals in Dallas affirmed appellant's conviction on direct appeal. Hass v. State, No. 05–87–00206–CR, January 22, 1988. We granted appellant's petition for discretionary review in order to determine whether the Court of Appeals correctly decided that the affidavit for a warrant to search appellant's mini-warehouse set forth probable cause to believe that a controlled substance was then at the warehouse.[1] Since we find no showing of probable cause, we reverse appellant's conviction and remand for a new trial.

The record reflects that Rockwall police officer James White observed appellant's vehicle approaching a mini-warehouse complex about midnight on May 24, 1986. Officer White kept a watch on the warehouse, and heard a sound which he believed to be "saws running" emanating from the mini-warehouse complex. Believing a burglary was in progress, Officer White called for backup assistance and Officer Brian Bosworth arrived in response to the call. The officers separated, but kept in constant contact via radio. Officer Bosworth then saw appellant and another man leave appellant's mini-warehouse, load a box into appellant's vehicle, and drive off. Officer White was stationed down the road and observed none of these things. The two officers then collaborated to stop the vehicle in order to investigate for burglary. Protruding from a pasteboard box behind a seat, syringes were visible in plain view. Because the officers smelled a distinctive smell associated with the manufacture of methamphetamine, they further investigated the contents of the pasteboard box. They found a small amount of a substance associated with the manufacture of methamphetamine and miscellaneous drug and chemical paraphernalia.

The occupants of the vehicle were arrested and the vehicle impounded and inventoried. Officer White then drafted the following search warrant affidavit for the purpose of obtaining a warrant to search the warehouse for illegal drugs:

---

1. We review the decision of the Court of Appeals even though we note that error was not preserved by appellant at trial. Although he filed a motion to suppress certain tangible evidence, appellant asked only for the suppression of evidence seized from his person, not for the suppression of evidence seized from the mini-warehouse. However, since the Court of Appeals decided the case on the merits, our review of their opinion includes a review of its merits as well. *Wilson v. State*, 772 S.W.2d 118, 120 (Tex.Cr.App.1989), mandates that the State must raise a procedural defect barring appeal at the Court of Appeals. Such was done in this case. However, *Wilson* goes on to say that once such an argument is rejected by the Court of Appeals, the State must raise the argument in a petition for discretionary review or a cross-petition for discretionary review in order for this Court to consider the argument. Since the State has filed nothing in this Court pertaining to this cause, the issue of error preservation is not properly before us. *Id.* at 120, fn. 3.

1. THERE IS IN ROCKWALL COUNTY, TEXAS A SUSPECTED PLACE AND PREMISES DESCRIBED AND LOCATED AS FOLLOWS: A mini warehouse, designated as warehouse number A–36 of the Rockwall Mini Storage, being described as a one-story multi-mini storage warehouse complex, located at 2000 Kirsty Lane, in the City of Rockwall, Rockwall County, Texas.

2. THERE IS AT SAID SUSPECTED PLACE AND PREMISES PROPERTY CONCEALED AND KEPT IN VIOLATION OF THE LAWS OF TEXAS AND DESCRIBED AS FOLLOWS: Amphetamine

3. SAID SUSPECTED PLACE AND PREMISES ARE IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING PERSONS: Tommie Lee Hass

4. IT IS THE BELIEF OF AFFIANT, AND HE HEREBY CHARGES AND ACCUSES, THAT: Said Tommie Lee Hass, on or about the 24th day of May, 1986 in Rockwall, Rockwall County, Texas, did then and there knowingly possess a controlled substance, to-wit, Amphetamine

5. AFFIANT HAS PROBABLE CAUSE FOR SAID BELIEF BY REASON OF THE FOLLOWING FACTS: Affiant, James White, is employed by the City of Rockwall Police Department and is currently assigned to the Patrol Division.

Affiant was advised by a confidential informant that the said Tommie Lee Hass has a quantity of amphetamine and manufactures said amphetamine at his residence. Affiant received this information from said informant approximately 6 months ago.

Affiant has had Hass under surveillance for 6 months. Affiant on the 24th day of May, 1986, observed a suspicious vehicle being parked at the location described in paragraph # 1. The said vehicle is described as a Black 1985 Toyota Supra 3 door, 86 Tx 767HGY. Affiant observed 2 subjects enter into a mini storage warehouse, and overheard sawing. Affiant then observed the subjects place an unknown item inside the vehicle.

That the subjects then left the location. That Affiant believing a Felony may have been committed, made a traffic stop of the above described vehicle.

That Affiant contacted the occupants of the vehicle. That Affiant smelled an odor of Phenylacetic Acid, which is an ingredient of amphetamine. Affiant has personal knowledge of this odor from his past experience. Affiant observed several syringes and 1 vial containing a brown liquid believed to be a controlled substance, to-wit, Amphetamine.

Affiant did arrest Hass and Danny Jones.

Testimony at the suppression hearing revealed that several of the statements made in the affidavit were not true. In the third paragraph under Section 5, Officer White stated that "Affiant observed two subjects enter into a mini-warehouse." He testified that he did not actually observe this. The next sentence in the affidavit asserts that "Affiant then observed the subjects place an unknown item inside the vehicle." However, Officer White admitted at the suppression hearing that Officer Bosworth, not he himself, actually made this observation. When asked if these statements in his affidavit were "a little misleading," Officer White replied "I see what you mean, yeah."

■ When a police affiant makes statements in a search warrant affidavit which are intentionally false or made with reckless disregard for the truth, the statements must be excised from the affidavit before determining whether the affidavit affords probable cause for the issuance of the warrant. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *Spencer v. State*, 672 S.W.2d 451 (Tex.Cr.App.1984); *Juarez v. State*, 586 S.W.2d 513 (Tex.Cr.App.1979). This case is extremely similar to the *Juarez* case, *supra*. In that case, the affiant described a transaction as his own firsthand observation, but he later admitted that he was not at the scene when the transaction occurred. *Juarez*, 586 S.W.2d at 515. We held that this kind of misstatement satisfied the *Franks'* falsity test and struck the misstatement from the affidavit before considering whether the affidavit stated probable cause. The case

at bar also involves an affiant who claimed to have seen certain transactions he was in no position to see. Both in *Juarez* and in this case, the transactions in the affidavit may well have occurred. The dishonesty in the affidavits consists of the affiants' claims to have personally witnessed events which were beyond their purview.[2] We will not consider the two untrue statements discussed above in determining whether Officer White's affidavit states probable cause.

█ We must now consider whether the affidavit, as reformed, set forth probable cause to justify the issuance of a search warrant. "Probable cause exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the property that is the object of the search probably is on the person or premises to be searched at the time the warrant issues." *Gish v. State*, 606 S.W.2d 883, 886 (Tex.Cr. App.1980). The facts submitted to the magistrate (without considering the false statements discussed above) are insufficient to justify such a conclusion.

In reaching this conclusion, we are guided by *Tolentino v. State*, 638 S.W.2d 499 (Tex.Cr.App.1982). In that case, a police officer found a bag of marihuana bricks on a street corner near the outskirts of town. The bag contained an empty wrapper and an airline ticket bearing appellant's name in addition to the wrapped marihuana bricks. Because the only residences in the vicinity were apartments in a complex several blocks away, the officer took the bag to the complex and was told by a "reliable" resident that defendant lived in a particular apartment. *Id.* at 500–501. This Court held that an affidavit containing these facts failed to state probable cause to believe that marihuana would be found in appellant's apartment.

There is nothing shown in the affidavit to establish the inference and support the belief that marijuana was in the residence of the appellants .. (s)uspicion and conjecture do not constitute probable cause, and the facts as recited in the affidavit in this cause evidence nothing more than mere suspicion. *Id.* at 502.

This case must be distinguished from *Gish, supra,* and *Marsh v. State*, 684 S.W.2d 676 (Tex.Cr.App.1984). In those cases, there were circumstances which indicated that drugs were likely to be found in certain places but also strong smells associated with drugs emanating from the places searched. In this case, the facts set forth in the affidavit are insufficient to link the mini-warehouse with the possession or manufacture of illegal drugs even if we accept, *arguendo*, the informant's statement that appellant had possessed illegal drugs at his residence.[3] The affidavit contains nothing about the warehouse emitting a smell associated with the manufacture of drugs, nor is there any showing that the box in which the syringes were found had been removed from the warehouse. There is no evidence in the affidavit suggesting that the substance in the automobile had been recently manufactured, such as the warm temperature or a pungent odor emanating specifically from the substance. The mere fact that suspects had just come from a mini-warehouse and possessed alleged illegal drugs in their automobile does not, without additional facts to link the drugs to the warehouse, justify a search of the warehouse for additional controlled substances.

The judgment of the Court of Appeals is reversed and the case is remanded to the trial court.

STURNS, J., not participating.

---

2. At least one of the false statements in the affidavit from this case could have been easily remedied. Officer White need only have stated that Officer Bosworth saw the item being loaded into appellant's vehicle instead of attributing the observation to himself.

3. The statement from the informant is arguably irrelevant because it concerns an entirely different location at a time six months prior to the affidavit. It also suffers from a total absence of information attesting to the reliability of the anonymous informant. See *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).