NUMBER
13-02-706-CR

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

GUSTAVO LOPEZ
MIRELES,                                                          Appellant,

 

                                                             v.

 

THE STATE OF TEXAS,                                                                    Appellee.

 

 

 

                     On appeal from the 332nd
District Court

                                        of
Hidalgo County, Texas.

 

 

 

                                M
E M O R A N D U M   O P I N I O N

 

     Before Chief Justice
Valdez and Justices Rodriguez and Garza

 

      Opinion by Chief
Justice Valdez

 








Appellant, Gustavo Lopez Mireles, appeals from his
conviction for murder in five issues. 
Specifically, he alleges that his conviction should be reversed and this
Court should render a judgment of acquittal because (1) the warrant affidavit
was insufficient on its face to establish probable cause to obtain samples of
appellant=s blood, saliva and hair; (2) the trial court abused
its discretion in denying Mireles=s motion to suppress evidence obtained pursuant to
the search warrant; (3) the evidence is insufficient to sustain his conviction
as the State failed to prove that the instrument of death was unknown to the
grand jury; (4) the evidence is insufficient as the State failed to prove that
the grand jury did not know that the instrument used was not a knife; and (5)
the trial court erred in denying Mireles=s motion for a directed verdict.

Background

On June 23, 2001, Mary Jane Rebollar was found dead
in her own car which had been abandoned in a field and set on fire.  An autopsy revealed that she died of multiple
stab wounds.  The ensuing investigation
led to the arrest and indictment of Mireles. 

Mireles was charged in a three-count indictment:
count one charged Mireles with capital murder, count two charged murder, and
count three charged arson.  Count two
(murder) was presented in alternate paragraphs alleging two different manners
of causing death, either (in paragraph one) by stabbing the victim with a knife
or (in paragraph two) by stabbing the victim with Aa sharp object to the grand jurors unknown.@  

Mireles pled not guilty. The trial court granted
Mireles=s motion for a directed verdict as to count one and
the first paragraph of count two, and the State later dismissed count
three.  The jury was accordingly only
charged with the second paragraph of count two, which alleged that Mireles
caused Rebollar=s death by stabbing her with an unknown object.  Mireles was found guilty and the trial court
imposed a life sentence. 

Adequacy of Affidavit








By his first issue on appeal, Mireles asserts that
the trial court erred in denying his motion to suppress evidence obtained as a
result of a search warrant issued in violation of the requirements of the Texas
Code of Criminal Procedure. 
Specifically, he alleges that the affidavit underlying the search
warrant was insufficient to establish probable cause, and therefore any
evidence obtained based on the warrant had to be excluded as Afruit of the poisonous tree.@  The search
warrant required Mireles to provide samples of his blood, saliva and hair for
forensic analysis.

A warrant may be issued to search for and seize
property or items that are evidence for an offense or which tend to show that a
particular person committed an offense.  See Tex. Code Crim. Proc. Ann. art.
18.02(10) (Vernon Supp. 2004).  A search
warrant may not be issued for this kind of evidence unless supported by a sworn
affidavit that sets forth the following facts sufficient to establish probable
cause:  (1) a specific offense has been
committed, (2) the specifically described property or items that are to be
searched for or seized constitute evidence of that offense or evidence that a
particular person committed that offense, and (3) the property or items
constituting evidence to be searched for or seized are located at or on the
particular person, place, or thing to be searched.  Id. art. 18.01(c) (Vernon Supp. 2004).








The task of the magistrate issuing a search warrant
is to make a practical, common sense decision as to whether, given all the
circumstances set forth in the affidavit before him, there is a fair
probability that contraband or evidence of a crime will be found in a
particular place. Trevino v. State, 875 S.W.2d 373, 375 (Tex. App.BCorpus Christi 1994, no pet.) (citations
omitted).  An affiant must present the
magistrate with sufficient information so as to allow for a determination of
probable cause; a merely conclusory statement will not do.  Id. 
Although sufficiency should be determined from the "four
corners" of the affidavit, the magistrate can make reasonable inferences
from the facts presented which then support a common sense conclusion.  Id. at 376.   Probable cause may be founded upon hearsay
and information received from informants. 
Janecka v. State, 937 S.W.2d 456, 462 (Tex. Crim. App.
1996).  Specifically, a magistrate is
entitled to rely upon information supplied by the police officer's own
observations or through other sources of information. Trevino, 875
S.W.2d at 376.

According to the standard of review applied to
questions of affidavit adequacy, the decision of the magistrate is to be
accorded deference by reviewing courts and is only to be overruled if the
decision extends beyond the bounds of reasonable disagreement.  See Swearingen v. State, 143 S.W.3d
808, 811 (Tex. Crim. App. 2004). Furthermore, the decision of the trial
court at the suppression hearing regarding the adequacy of the warrant is to be
given deference by the appellate court.  See Hinojosa v. State, 4 S.W.3d 240, 247
(Tex. Crim. App. 1999). 

Mireles alleges that the affidavit did not
adequately explain why samples of his blood, saliva and hair were required,
given that there was no statement in the warrant naming him the suspect or any
statement that the suspected assailant was believed to have left blood, saliva
or hair samples at the scene. 

We disagree and conclude that the affidavit in this
case was adequate to support the magistrate=s
reasonable conclusion that a search warrant should issue.  The 
affidavit, contrary to Mireles=s assertions, does identify him in two places as Athe suspect,@ clearly indicating that the police believed him to
have committed the offense described.  It
also includes statements from witnesses establishing the connection between
Mireles and Rebollar.  The affidavit
notes that the victim, Rebollar, had been killed by multiple stab wounds.   We conclude the affidavit supporting the
search warrant was sufficient to allow the magistrate to draw a reasonable
inference that, because of the violent nature of Rebollar=s death, it was likely that blood, saliva or hair of
the assailant would have been left at the scene.  Although this conclusion is not explicitly
made, it is easily inferred from the available information.  See Morales v. State, 745 S.W.2d 483,
489 (Tex. App.BCorpus Christi 1988, no pet.) (A[T]he evidence itself provides a common‑sense
answer to how appellant's blood would have been deposited at the scene of the
crime . . . It would be ridiculous to require the investigator to state such
obvious inferences in his affidavit.@).  








The magistrate=s decision to issue the warrant based on the
attached affidavit does not extend beyond the bounds of reasonable
disagreement, and we accordingly defer to his decision, as well as to the
subsequent evaluation by the trial court. 
See Swearingen, 143 S.W.3d at 811.  Mireles=s first issue is overruled.  

Statements in Affidavit

By his second issue, Mireles argues that the trial
court erred in denying his motion to suppress evidence illegally obtained from
the search warrants because the warrants were supported by affidavits
containing untrue statements. 

A trial court's ruling on a motion to suppress is
reviewed for an abuse of discretion. 
Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). If the
issue is one of application of law to facts, and the ultimate resolution of
that issue does not turn on an evaluation of credibility and demeanor of a
witness but rather is based on undisputed facts, then the reviewing court may
review that issue de novo.  See id.;
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc).

An affidavit supporting a search warrant has a
presumption of validity.  See Franks
v. Delaware, 438 U.S. 154,171 (1978). 
A defendant who alleges that an affidavit contains false information
bears the burden of proof in a AFranks
motion@ and must (1) establish deliberate falsehood or
reckless disregard for the truth by the affiant, specifically pointing out the
portion of the affidavit claimed to be false, (2) accompany these allegations
with an offer of proof stating the supporting reasons, and (3) show that when
the portion of the affidavit alleged to be false is excised from the affidavit,
the remaining content is insufficient to support the issuance of the warrant.  Cates v. State, 120 S.W.3d 352, 356 (Tex.
Crim. App. 2003) (citing Ramsey v. State, 579 S.W.2d 920, 922-23 (Tex.
Crim. App. 1979)).  A trial court=s ruling on a Franks motion is owed great
deference, and its ruling will be overruled only if it lies outside the bounds
of reasonable disagreement.  Janecka,
937 S.W.2d at  462.  








Mireles asserts that the statements of three
witnesses, Maribel Mireles, Delia Rodriguez and Alejandro Rivera, were falsely
reported by Investigator Noe Canales in his affidavit.  Mireles argues this was proven by the hearing
on his Franks motion when Canales admitted that the affidavit contained
hearsay statements and included information, such as Delia=s statement, that he had not obtained personally but
instead received from other unidentified officers.  Mireles also points to Alejandro=s testimony from the hearing that because he was
illiterate, he could not review the statement written on his behalf by
officers, as well as to an affidavit from Maribel denying that she made the
statements attributed to her in the warrant affidavit.   Mireles cites Juarez v. State, 586
S.W.2d 513, 517-18 (Tex. Crim. App. 1979) and Hass v. State, 790 S.W.2d
609, 612 (Tex. Crim. App. 1990) in support of this assertion.  








We first address the statements of Delia and
Alejandro.  Information in a warrant
affidavit may be based on hearsay.  Belton
v. State, 900 S.W.2d 886, 893 (Tex. App.BEl
Paso 1995, pet. ref'd).   Therefore, the
witnesses= recorded statements, although hearsay, substantiate
the magistrate=s finding of probable cause to search.  Furthermore, when there has been cooperation
between members of the same law enforcement agency, the sum of the information
known to the cooperating officers at the time of an arrest by any one of the
officers involved is to be considered in determining whether there was
sufficient probable cause.   See
Woodward v. State, 668 S.W.2d 337, 344 (Tex. Crim. App.1984) (en banc); Taylor
v. State, 82 S.W.3d 134, 138 (Tex. App.BSan
Antonio 2002, no pet.).  Thus, the trial
court should not have considered the statements of Delia and Alejandro in the
affidavit to be improper simply because the affidavit consolidated the reports
of all investigating officers.  Also,
Alejandro admitted at the Franks hearing that he spoke to an
investigator and that his oral statement was written down, read to him and
signed by him.  We defer to the trial
court=s evaluation of the credibility and demeanor of
witnesses, Perales v. State, 117 S.W.3d 434, 437 (Tex. App.BCorpus Christi 2003, pet. ref'd); Morrison v.
State, 71 S.W.3d 821, 827 (Tex. App.BCorpus Christi 2002, no pet.), and determine that,
based on the record and the trial court=s decision, Mireles did not meet his burden of
overcoming the presumption of affidavit validity with regard to the statements
of Delia and Alejandro.  See Franks,
438 U.S. at 171.

We now turn to Maribel=s
statement.  In conjunction with Mireles=s Franks motion, Maribel submitted an
affidavit swearing that Astatements cited as my own in Noe Canales= affidavits were not made by me@ and Aare false.@  Without
weighing the credibility of the warrant affidavit against Maribel=s subsequent denial of her statement therein, we
note that had her statement been excised from the warrant affidavit, the
remaining evidence would remain more than sufficient to establish probable
cause.  See Cates, 120 S.W.3d at
356.   All information attributed to her
in the warrant affidavit was corroborated by other sources also mentioned in
the warrant affidavit.  

Finally, we note that the two cases cited for
support by Mireles, Juarez and Hass, are both inapplicable to the
facts here.  As stated in Hass, A[t]he dishonesty in the affidavits consists of the
affiants' claims to have personally witnessed events which were beyond their
purview.@  Hass,
790 S.W.2d at 612; see Juarez, 586 S.W.2d at 517-18.  There were no such claims in the warrant
affidavit here; instead, Canales listed information received from witnesses and
fellow investigators without falsely asserting that he had received this
information personally.

We conclude that the trial court=s ruling on Mireles=s Franks
motion should be accorded deference.  See
Janecka, 937 S.W.2d at 462.  We
overrule Mireles=s second issue. 

Grand Jury Due Diligence








By his third issue, Mireles asserts that the
evidence is insufficient to sustain his conviction as the State failed to prove
that the instrument of death was unknown to the grand jury.  He argues that there is a material variance
between the indictment and the proof as to the manner, means and method of
death.  Mireles relies on Matson v.
State, which states that if evidence at trial shows what type of object was
used to inflict the injury, an issue is raised with respect to whether the
grand jury had information as to the object used, and Ain that case, the State must prove that the grand
jury did not know the manner and means of inflicting the injury and that it
used due diligence in attempts to ascertain the manner or means.@  Matson v.
State, 819 S.W.2d 839, 847 (Tex. Crim. App. 1991).  Mireles asserts that the State failed to meet
this burden.

The court of criminal appeals, however, has expressly
disavowed the "due diligence" rule of Matson.  See Gollihar v. State, 46 S.W.3d 243,
253 (Tex. Crim. App. 2001);  Fagan v.
State, 89 S.W.3d 245, 249 (Tex. App.BTexarkana 2002, pet. ref'd) ("The rule
requiring the state to show that the grand jury exercised due diligence in
determining the instrumentality of the offense is no longer relevant to our
analysis.").  A non‑essential
element of the charge, such as an allegation that the object used to cause
injury was unknown to the grand jury, may properly be excluded from a
hypothetically correct jury charge.  In re A.J.G., 131 S.W.3d 687, 694 (Tex.
App.BCorpus Christi 2004, pet. denied); see Malik v.
State, 953 S.W.2d 234 (Tex. Crim. App. 1997).  So long as the essential elements of the crime
charged have to be found by the jury in order for a guilty verdict to be
returned, the State does not have to additionally and separately prove the good
faith and due diligence of the grand jury in determining non‑essential
elements of the charge, such as what kind of weapon was used.  See Malik, 953 S.W.2d at 240; A.J.G.,
131 S.W.3d at 694. 

Accordingly, we conclude that the State did not err
by failing to prove that the grand jury used due diligence in it attempts to
determine what kind of weapon was used, as this is no longer necessary.  We overrule Mireles=s third issue. 


Identity of Weapon








By his fourth issue, Mireles asserts that the
evidence is insufficient to sustain his conviction as the State failed to prove
that the grand jury did not know that the instrument used was not a
knife.  His argument is as follows: the
penal code defines Aknife@ as Aany bladed hand instrument that is capable of
inflicting serious bodily injury or death by cutting or stabbing the person
with the instrument.@ Tex. Pen.
Code Ann. ' 46.01(7) (Vernon 2003).  The evidence at trial showed that Rebollar
was stabbed multiple times with a screwdriver or similar instrument, though the
murder weapon itself was never identified. 
Because, Mireles contends, a screwdriver or similar tool would fall
under the penal code=s definition of Aknife,@ the grand jury must have known that the weapon was
in fact a Aknife,@ and, accordingly, the indictment alleging that the
weapon was unknown to the grand jury was erroneous.  He also argues that the evidence proving the
means and manner of death was legally insufficient.[1]


Sufficiency of the evidence should be measured by
the elements of the offense as defined by the hypothetically correct jury
charge for the case.  Gollihar, 46
S.W.3d at 252; Malik, 953 S.W.2d at 240. 
Therefore, with regard to Mireles=s contention that the indictment was erroneous
because of the exclusion of the word Aknife,@ we note that a description of the murder weapon can
be excluded from a hypothetically correct jury charge and therefore is
unnecessary in evaluating the legal sufficiency of the evidence.  See Fagan, 89 S.W.3d at 249.  We also note that it was never conclusively
established that Rebollar was in fact stabbed by a screwdriver, as the weapon
used was never found, and furthermore, that a screwdriver is not generally
considered a Abladed@ instrument equivalent to a knife.  The indictment, therefore, was not legally
insufficient.








Furthermore, we note that the evidence presented at
trial was sufficient for a rational jury to conclude that a sharp object of
some kind was used to stab the victim.  See
Cardenas v. State, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000).  The medical examiner testified extensively
regarding the cause of death and presented his autopsy report and numerous
photographs of the victim to the jury. 
He counted at least forty-six separate stab wounds, which penetrated
Rebollar=s esophagus and windpipe and were all Avery small,@ with two blunt edges and no flat edge.   He concluded that Rebollar died from a loss
of blood due to the stab wounds.

Given that the jury charge was correct and the
evidence regarding the manner and means of death was legally sufficient,  we overrule Mireles=s fourth issue.   


Motion for Directed Verdict

By his final issue on appeal, Mireles complains that
the trial court erred in denying his motion for a directed verdict of not
guilty regarding count two, paragraph two of the indictment. 

A challenge to the trial court=s denial of a motion for directed verdict is treated
as a challenge to the legal sufficiency of the evidence.  See Williams v. State, 937 S.W.2d 479,
482 (Tex. Crim. App. 1996).  However, in
this section of his brief, Mireles only repeats his earlier assertions
that  there was insufficient evidence to
demonstrate the grand jury=s due diligence in ascertaining the identity of the
weapon, which we have addressed above and do not repeat here.  He also adds a complaint regarding his
indictment=s disjunctive nature.  Mireles suggests that an allegation in
paragraph one of the indictment that the murder weapon was a knife should
preclude the allegation in paragraph two (the paragraph ultimately submitted to
the jury) that the murder weapon was an unknown sharp object.  

Our Court has previously ruled on the propriety of
disjunctive indictments and jury charges:








The
hypothetically correct jury charge, so long as it conforms to the Malik
requirements, can be presented in the disjunctive, giving the jury mutually
exclusive alternatives as to how the offense may have been committed. Kitchens
v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991); Mendez v. State,
716 S.W.2d 712, 713 (Tex. App.BCorpus Christi 1986, pet. ref'd). For example, the
jury charge can allege that a murder was committed by shooting the victim with
a handgun or by strangling the victim, during the commission of robbery or
sexual assault. Kitchens, 823 S.W.2d at 257, n.2.   

A.J.G., 131 S.W.3d at 694. 
The court of criminal appeals also addressed this question and found
disjunctive indictments to be proper.  See
Zanghetti v. State, 618 S.W.2d 383, 387 (Tex. Crim. App. 1981).  An indictment may contain as many separate
paragraphs charging the same offense as is necessary to meet the contingencies
of the evidence.  Graham v. State,19
S.W.3d 851, 853 (Tex. Crim. App. 2000). 
In this case, the indictment alleged that Mireles caused the victim=s death by stabbing her with a knife or by
stabbing her with an object unknown to the grand jury.  At trial, the State proved the latter manner
and means of causing death, and the charge was properly submitted to the jury
on those grounds alone.  

As there is no evidence
to show that any other element of the jury charge was improper, we conclude
that the trial court did not err in denying the motion for directed verdict on
these grounds.  We accordingly overrule
Mireles=s fifth issue.

Conclusion

The judgment of the trial court is
affirmed. 

 

 

 

                                           

Rogelio
Valdez,

Chief
Justice

 

 

 

Memorandum Opinion
delivered and filed

this 23rd
day of June, 2005.











[1]The standard of review for
questions of legal sufficiency is well established and we will not repeat it
here.  See Jackson v. Virginia,
443 U.S. 307, 318-19 (1979); Cardenas v. State, 30 S.W.3d 384, 389-90
(Tex. Crim. App. 2000).